RECHTSANWALT
# DR. JOHANNES STIELDORF

A-1010 Wien, Nibelungengasse 1-3
Tel: +43-(0)1-587 62 14 / 0   Fax: DW 16
e-mail: office@stieldorf.at
Konto:
Bank Austria Creditanstalt AG
0943-46657/01 (BLZ 12000)
ADVM: R108218

<u>*Via Hand Delivery*</u>
Her Honor Shira A. Scheindlin USDJ
United States District Court
Southern District of New York
500 Pearl Street, Chambers, Room 1620
New York, NY   10007

24th April, 2007

Re:   Ski Train Fire in Kaprun, MDL # 1428 (SAS);
Blaimauer / Mitsumoto et al v. Omniglow et al, 03-CV-8960 (SAS);
Geier et al v. Omniglow et al, 03-CV-8961 (SAS) and Mitsumoto et al v.
Robert Bosch et al 06-CV-01657 (transferred from MDFL)

Honorable Judge Scheindlin,

In view of my previous negative experiences with Mr. Fagan and his fellow attorneys, the latest declarations and allegations of Mr. Fagan give reason for me to clarify a few points although I myself am not one of the parties in the above mentioned court cases.

(1)
I lost my 18 year-old son Matthäus in the Kaprun catastrophe.
I represent my family and 20 further victim family members as attorney in the Kaprun case.
The last thing I want is that those responsible go scot-free when there is a reasonable chance of calling them to account.

(2)
I am extremely shocked at and disappointed with the verdicts delivered in the criminal proceedings in Austria.
In my opinion, both the verdict reached in the first instance and the verdict of the appellate court are flagrant judicial errors.
But, formally speaking, these decisions have to be respected.

(3)
In view of these verdicts, I must represent both myself and my family as well as my clients as best as possible as regards the civil law claims which are still open.

RECHTSANWALT
## DR. JOHANNES STIELDORF

(4)
Mr. Fagan appeared on the scene shortly after the catastrophe in Austria and promised the earth. He wanted to gain "millions" (whether for each victim or for each family member - he was not even able to ever sensibly clarify this question).

(5)
Over the last years and up until now, neither Mr. Fagan nor his fellow attorneys have answered basic questions regarding their efforts in the USA such as
- what law applies,
- when do the claims become time-barred,
- on what grounds does the US court have jurisdiction,
- how the various "defendants" are proved to be the proper parties with respect to the plaintiffs' claims, etc.

(6)
On the occasion of the opt-in declaration during the first class action he had already told all victim family members that the phrasing of this declaration was pre-determined by the court and could therefore not be changed. He also said that the deadline for joining could neither be changed nor extended.

(7)
He said the same again in August / September 2006 when he called in new declarations (retainers) in the form of an ultimatum. He, respectively Mr. Lowy, maintained that this was absolutely the last opportunity to participate in the US proceedings. Such participation would only be possible with a written power of attorney (retainer).

Judging from the way it was phrased, the objective of this retainer was obvious - to secure the representation rights for Mr. Fagan both in the USA and, above all, in Europe before the Austrian Commission and the absolute subordination to Mr. Fagan's methods and decisions.

(8)
With these (new) retainers, Mr. Fagan therefore tried to obtain authorisations and retainers (again) which had already expired, partly on account of the deadline set by him, or which he had actually not had from the very beginning. I had always made it clear for myself and my clients that he was only entitled to representation in the USA and that I alone would attend to the European proceedings.
The offer I had already made to Mr. Fagan in 2002(?) that we discuss and agree on final agreements so that any decision made would not interfere with the efforts of the other was completely ignored.

In September 2006, this point was again raised with Mr. Lowy with regard to Mr. Fagan's draft of a new retainer. At the same time, I pointed out numerous deficits in the amended complaint. He explained that, without this new retainer agreement, any possibilities at all of participating in the "successful" American proceedings would be finally lost for my clients and myself. Such participation would only be possible with a written retainer which would have to be submitted within a deadline of a few days.

RECHTSANWALT
DR. JOHANNES STIELDORF

The wording of this proposed retainer would in my opinion conflict with Austrian professional rules of conduct.
Furthermore, with this new retainer agreement, it is clear that Mr. Fagan also wishes to take over the leadership in the Austrian negotiations. This is not only contrary to agreement but also unacceptable in view of his performance in Austria which can only be described as being pathetic.

However, it emerged that no deadline had been set either by the court or by law and that court action obviously did not depend on a written retainer. Mr. Fagan apparently represented a number of clients without having received a new retainer.

(9)
Against this background, special mention must be made of the fact that Mr. Fagan was not willing or not in a position to give the Austrian Commission in Vienna precise details of whom he actually represented or for whom he believed he was conducting negotiations at the Commission meetings, in spite of repeatedly being asked to do so.

(10)
Mr. Fagan makes it clear both at meetings in Vienna and in his various complaints that he does not really know the case, that he confuses persons and facts and is not in a position to interpret the status of shareholdings and participations. In spite of it having been explained to him several times, he is completely unaware of the fact that entities with mere capital interests have no or only very limited influence, so that no liability on their part can be derived there from. Nor does he understand that public law corporations can only exert direct influence to a limited extent and only on the basis of legal provisions on companies such as, for example, the GBK (glacier railway).

(11)
Although there was no success discernable in the US cases as yet, he tried to keep the family members of the European victims toeing the line with unsubstantiated jubilant reports, repeatedly suggesting the imminent breakthrough/conclusion of a substantial settlement.

This is contrary to all the information available to me according to which all European companies named by him as defendants rejected a settlement in the USA as a matter of principle.

(12)
I believe that, at proceedings before a US judge in December 2006, Mr. Fagan maintained that he still represented both myself, my family and my clients (?). This is definitely not correct.
I have also heard that, considerable time ago, quite a number of other clients had withdrawn the powers of attorney they had given him or had simply allowed time-limited powers of attorney to expire without agreeing on an extension, but they were or are still being named by him as plaintiffs in the various proceedings.

RECHTSANWALT
DR. JOHANNES STIELDORF

(13)
In as far as I obtained information on which depositions Mr. Fagan was planning, I tried to determine the validity of the evidence tendered. In most cases, it ensued that this evidence was not suitable to contribute towards the decision-relevant facts of the case.

Questioning witnesses on procedural matters after the catastrophe is completely amiss if the claims have not even been sufficiently clarified on their merits (see above).

I have always accused Mr. Fagan of clearly acting against the interests of the clients here because all these useless and pointless depositions involve considerable costs and the European companies, who showed themselves to be willing to contribute towards the solution of the Austrian Commission, would of course deduct the costs incurred by the depositions from the amount reserved for the contributions.

(14)
Mr. Fagan and all the others who have made affidavits or applications to the court falsely maintain that I, for myself and/or the sub-commission, had tried to bribe Mr. Fagan with money to abandon the US complaints.

The truth is that, in the sub-commission, other companies and participants had shown willingness to make further contributions under the prerequisite that the US American proceedings, which had been completely unsuccessful to date, be stopped.

Even if I and quite a number of colleagues are of the opinion that Mr. Fagan's activities have lead to nothing but have, on the contrary, caused delays and useless/lost expenses and that he is therefore entitled to no fee or remuneration for his "efforts", the sub-commission resolved, as a general settlement for all US American attorneys (of the plaintiffs), to make an amount available as contribution to the costs should the American activities be ended.

Against this background, this was all that I set forth in the respective talks although it is my personal opinion that Mr. Fagan and the other attorneys were actually entitled to nothing for their activities in Europe which were counterproductive and only involved costs for the work of the Commission.

(15)
From the very beginning and now even more so in view of his latest activates, I have been and still am of the opinion that Mr. Fagan is only interested in being paid as large a fee as possible.

The fact that, in his bankruptcy proceedings, he quotes the sum of EUR 16,000,000 (not US Dollars 16,000,000) already offered by the Austrian Commission in Vienna as being his only (!) asset for reorganisation within the Chapter 11 proceedings clearly shows that he is of the opinion that his activities in the USA do not stand a chance of being successful.

RECHTSANWALT
# DR. JOHANNES STIELDORF

His paltry efforts of maintaining that important evidence such as the pressure tanks had apparently been found must also be seen against this background. This evidence is completely immaterial as regards the course of the catastrophe as the explosion of the pressure tanks was indeed a cause of the fire but did not occur until after the death of our loved ones.

(16)
As Mr. Fagan has not only repeatedly failed to observe deadlines in his bankruptcy proceedings but also in the proceedings pending here, but also not made submissions or presented documents in good time, it would seem necessary that the court exert pressure on him to coherently conduct the lawsuit.

The latest allegations and declarations are to be seen and assessed in the light of my statement.


Yours faithfully,


(Dr. Johannes Stieldorf)