*Translation of a report by the Police in Stuttgart for the Prosecution in Heilbronn, Germany*

# Investigation Report

Names of 5 defendants, 4 of Fakir, 1 of Simm Kunststofftechnik

*Page 2*
**1**
**Start of the investigative proceedings by the Prosecution in Salzburg**

*Page 6*
**2**
**Details about the installed fan heater**

*Page 11*
**3**
**Investigations in the Austrian proceedings**

*Page 12*
**4**
**Court files, investigative files and evidence put at the disposition of the Prosecution in Heilbronn**

**4.1**
**Court files**
(…)

**4.2**
**Evidence turned over**

On 3/9/06, the Court in Salzburg turned over evidence requested by the Prosecution in Heilbronn.

When the evidence was evaluated, the State Police Stuttgart found that several parts were missing, in particular those parts that, according to the expert reports by the experts Maurer and Geishofer, should prove the existence of production and construction faults of the fan heater Hobby TLB.

The following evidence is missing:

- The so-called fixation device of the fan heater from the unburned train, evidence number LGS 1
- A screw from a broken-off part casing part made of plastic material of the heater, evidence number LGS 1
- The fan heater Hobby TUB, article number 55 06 006 7406. This fan heater was described by expert Geishofer on page 89 of his expert report dated 10/13/03. (….)
- Parts of a fixation device of the fan heater Hobby TLB, also named as "Glaser alt". (…)

It has not been possible to find out where this evidence is located.

The experts Geishofer and Maurer and Mr. Maurers assistant Mori were interrogated also about these questions on November 21-22, 2006 in Graz respectively Leoben. They gave no indications that could lead to finding this evidence.

(….)

*Page 14:*
During the interrogations, it was confirmed what could already be seen while studying the files: negligence when dealing with evidence. The interrogated experts confirmed to have worked with this evidence, but evidence was transferred among the experts and from the experts to the court without proper records.

**Therefore, the Prosecution in Heilbronn did not have the most important evidence from Austria to appraise the facts of the case. As a consequence, such evidence was also not available to the experts assigned by the Prosecution Heilbronn, namely the German Synthetics Institute (Deutsches Kunststoff Institut) in Darmstadt and the Kriminaltechnische Institut at the Landeskriminalamt Baden-Württemberg in Stuttgart.**
(….)


*Page 16*
5
**Investigations by the Prosecution in Heilbronn**


*Page 19*
6
**Results of the investigations**


*Page 20*
**Page 6.2**
**Test marks for the heater Hobby TLB from VDE – the Association for Electrical, Electronic & Information Technologies**

(…)
The fan heater Hobby TLB received all test marks requested from Fakir for the intended use, namely the use as a stand-alone device in a living room or bathroom, or mounted on a wall.

2

However, the heater was installed as a built-in device in a vehicle. Fakir explicitly stated in its instruction manual that the device was not meant to be installed in vehicles. However, the device was installed in an opening of the sheet of the control desk – this corresponds to a modification of the construction. As a consequence, the tongue and groove effect of both casing parts was annulled, and protection against droppings war no longer guaranteed. By this installation alone, the fan heater lost the validity of the VDE test mark.
(…)

*Page 21*
(…)
The fact that test marks lose validity if the construction and the application are changed should be known to every leaned craftsman in the electric engineering business, therefore also to electricians from Siemens and the company electricians from GBK. Therefore, the close proximity between fan heater and hydraulic measuring pipes should never have occurred. (…)
(…)
The company electrician of Gletscherbahnen Kaprun AG, Georg Kellner, said the following during his witness interrogation on 05/17/06: "I know that producers do not assume liability if an electric device was modified. In this case, however, Swoboda and Siemens were responsible for the electric installations. Furthermore, the train was approved by the authorities, and I could assume that the heater was installed according to the rules."

*Source: Interrogation Georg Kellner on 05/17/06, page 3 (..)*

From such a skilled person like Mr. Kellner in particular it should have been expected that he would have addressed this point with his superiors at GBK, or with Swoboda or Siemens. He did not do it. (…)

*Page 25*
**6.5**
**Construction and production faults of Hobby TLB**

(This point deals with the expert report by expert Maurer and states that he was wrong.
2 ½ pages.)
(….)

*Page 31*

**6.6**
**State of the fan heater when the experts Geishofer and Maurer made their reports**

1 page (…)

*Page 32*
(…)
The description by both experts shows how problematic the Austrian criminal proceedings were.

3

The described fan heater was removed from the train on 11/14 or 11/15/2000 (there are different statements from KTZ and expert Muhr), as instructed by Mr. Tisch from KTZ Vienna. The heater was disassembled and photographed at the KTZ on 12/5/2000. These photographs show no damages at the fan heater, also not in the area of the fixation device. The heating element is firmly screwed to the casing.

Mr. Bind said at his interrogation on 10/04/06 in Vienna that on that day he had not noticed any damages, particularly not in the area of the fixation device. He was not able to understand the pictures in Maurer's expert report.
Also according to statements of experts Muhr and Lange, who had the heater in March 2001, the heater was undamaged.

Prosecutr Danninger-Soriat confirmed that also in July 2002 in Linz during the trial, the fan heater was undamaged.

Professor Maurer said in his interrogation on 11/21/06 in Leoben that he had assumed that the state of the heater in November 2000 had been just ike he had got if from expert Geishofer.

This means that Mr. Geishofer did not inform Professor Maurer about his thoughts, written down in his expert report, that the damages which he stated had possibly been caused by the experiments of other experts or by the various transports.

Based on these statements, the result of the expert report by Professor Maurer must be challenged because he had acted on wrong assumptions. He thought that the breaking of the fixation device had occurred while the heater was still installed – which was not true, according to several witnesses. The photographs of KTZ were available in July 2002. This means that the experts and the forensic experts working in the proceedings did not cooperate, communicate and exchange their knowledge as closely as it would have been required in such a case.

*Page 33*
From the court files of the Court in Salzburg it is not possible to reconstruct the exact path of the heater and the substantial modifications it suffered.

Between the removal from the train in November 2000 and the time the heater was taken over by the experts Geishofer and Maurer, two years passed. Possibly, the fixation device broke due to improper handling. Therefore it is doubtful whether the break can have the significance it was awarded by the Austrian criminal proceedings. It is not possible to find out when the break occurred. (….)


*Page 34*
**6.7**
**Expert reports Geishofer and Maurer as a basis for the verdict of the first instance**

In its verdict the Court reached the conclusion that the results of the experts Maurer and Geishofer came closest to what might have occurred on 11/11/2000.

(….)

The fact that the two experts – wrongly – assumed that the fan heater had already been damaged when it was removed from the train on November 2000 was not discussed in the Austrian proceedings although the KTZ photographs of November 2000 were known.

*Page 35*
**6.8**
**Fire caused by the tilting of the heating element after the fixation device broke**

(… description of the theories by Geishofer and Maurer, on which the Court based its verdict … 1 ½ pages)

*Page 36*
This cause of the fire cannot be confirmed by tests made by KTI of the Police Stuttgart.

(….)

*Page 39*

(…)
The investigations undertaken led to the result that the interior of the removed heater had hydraulic oil on it.

(In the next few pages the report described that Geishofer had seen the red looking liquid without testing it – he only tested it with the touch of his finger - , that the KTZ had spoken about the connection between hydraulic oil and fire at the early stages of its investigation but did not want to admit it during the trial, and that Judge Seiss did not order to examine the interior of the heater.) (…)

*Page 44*

**6.9.7**
**Detection of oil traces in the interior of the heater by the Police Stuttgart and the KTI of the Landeskriminalamt Stuttgart**

(….)
Both at the exterior side as well as at the interior, evidence of hydraulic oil traces could be proven. (….)

*Page 47*

**6.12**
**State of the Art at the time of the renovation of the trains**

(….) The company Gangloff in Bern had much higher standards for the construction of funiculars already at the end of the 1980s (….)

5

*Page 48*
**6.13**
**Yearly maintenance of the fan heater**

(… interrogation of GBK electrician Georg Kellner basically showing that GBK did not do proper maintenance of the heater ….)

*Page 49*
**7**
**Summary**

(….)

*Page 50:*
Based on the results of the trial, the Gletscherbahnen Kaprun AG filed criminal charges against the responsible persons of Fakir for alleged negligent arson and negligent killing of 155 persons.

The Prosecution in Heilbronn took over this investigation upon request of the Prosecution of Salzburg. The investigations were carried out by the State Police Headquarter Stuttgart, division S/OK.

The result of these investigations differs in essential points from the result of the Austrian criminal proceedings.

Based on the investigation, there cannot be any allegations of criminal conduct against the responsible persons of the Fakir company and the Simm company, who produced the casing made of plastics.

**Reasoning:**

Fakir had produced the fan heater model Hobby TLB, which the company Swoboda had installed for the Gletscherbahnen Kaprun AG, as a fan heater for living rooms and bathrooms, and the required permit tests at the VDE were made based on these purposes.
(…)
The inspection signs and the permit of the fan heater Hobby TLB lost their meaning at the moment when Swoboda installed the heater in an sheet made of aluminium at the conductor's cabin, thus making changes that were relevant in terms of the construction of the heater.
Also, the heater lost its permit because it was used in a setting that was not in conformity with the purposes for which the heater had been produced – namely, to heat a living room or a bath room instead of the conductor's cabin of a funicular, which is a vehicle.

Fakir pointed out in its service manual that it was not permitted to install the heater in vehicles.

Furthermore, the service manual indicated that a permanent connection to the electricity net was not an appropriate connection. This recommendation was disregarded. The conductor did

not have the possibility just to pull out the plug. Therefore, there was no longer full protection of the thermostat.
(…. 6 more paragraphs ….)

From the beginning of the investigations, expert Muhr kept talking about the possibility that hydraulic oil from leaking hydraulic measuring pipes may have entered the interior of the heater and ignited. Also the KTZ Vienna talked about this possibility already in December 2000 – which was confirmed by the Prosecution in Salzburg. During the trial, however, KTZ employees denied having made such statements.

However, very early on there were signs that the fire catastrophe had been caused by a conjunction of oil and heater. These signs were seen when the unburned train was inspected. There were no usable traces left at the burned train, due to the effects of the fire. (…)

The following indications speak for the correctness of the expert report by expert Muhr:
(….1 page ….)

Furthermore, it has to be taken into consideration that the expert reports that finally led to the acquittal, were based on insufficient assumptions. The damages described by expert Maurer, in particular the broken plastic part from the fixation device, occurred only in 2002, and it is unclear how they occurred.

The investigations by the Prosecution in Heilbronn were made difficult because the German investigation was not provided with essential evidence on which the acquittal had been based. In following evidence is missing:

- The fixation device which expert Maurer had separated from the back side of the casing
- A broken part of a fixation screw discovered by the experts Geishofer and Maurer
- Parts of a comparable fan heater which was named "Glaser alt" in the Austrian proceedings
- Parts of the wooden panelling – in particular the board which had reddish staining in the first photographs of KTZ

For the investigation of the Prosecution in Heilbronn, based on a request for judicial assistance, three employees of KTZ Vienna were interrogated in a district court in Vienna, Two engineers who had done investigations in Kaprun received the authorization to give unrestricted testimony. However, Mr. Grone's authorization to speak was so severely restricted that he was allowed only to speak about his personal observations. Mr. Grone had had been responsible for the complete investigative file.

Therefore, it could not be clarified in the proceedings of the Prosecution in Heilbronn which conclusions the KTZ had come up with, why the investigations had been simply halted and why KTZ had made a report that was only five pages long.

As a result of the investigations it can be said that the accident of 11/11/2000 could have been avoided if Swoboda had installed fan heaters adapted to vehicles, which were available on the market.

The responsible persons of Fakir and Simm neither developed nor produced nor recommended the fan heater Hobby TLB for the installation in vehicles. (…)